**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 23-CR-26 (RCL)-3** |
| | : | |
| **WILLIAM BROCK,** | : | |
| also known as "Stu" | : | |
| **ANTHONY ANTWON MCNAIR JR.,** | : | |
| also known as "Mousey" | : | |
| **ERIN Sheffey** | : | |
| also known as "Freak", | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant Erin Sheffey be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) (crime of violence), and 18 U.S.C. § 3142(f)(1)(E) (a felony involving a firearm) of the federal bail statute.

As discussed further below, the defendant stands charged in this case with one count of Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of Title 18 U.S.C. § 1951, one count of Interference with Interstate Commerce by Robbery, in violation of Title 18 U.S.C. § 1951, one count of Bank Robbery, in violation of Title 18 U.S.C. § 2113, and one count of Using, Carrying, Possessing, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of Title 18 U.S.C. § 924(c)(1)(A)(ii). Defendant Sheffey played a significant role in the armed and violent robbery of armored trucks in broad daylight.   He also shot at a man leading to a public shootout that left that man dead.   He is a danger to our community and no conditions of release can keep our community safe were he to be released.

The government requests that the following points and authorities, as well as any other facts,

arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## **BACKGROUND**

This case involves three robberies of Brinks armored trucks in October and December 2021, and March 2022.   All three robberies occurred at the same time (around 9:00 AM), on the same day (Wednesday), and targeted a Brinks armored truck.   In all three, the robbers arrived prior to the Brinks truck and laid in wait, suggesting they had surveilled the driver's route on previous occasions.   In the first and second robberies, the same Brinks driver was targeted and assaulted. The first and third robberies occurred at the same location.   Additionally, in the first and third robberies, the robbers used stolen vehicles as getaway cars before abandoning and burning those vehicles.   The government anticipates proving at trial that defendant Sheffey entered into a conspiracy with codefendants Brock, McNair, and others, and played a central role in the March 2, 2022 robbery.

### *The October 6, 2021 Robbery*

On October 6, 2021, at approximately 9:30 a.m., a Brinks armored truck driver was robbed by four men while the truck was parked in front of SunTrust Bank at 1340 Good Hope Road Southeast, Washington, D.C.   Three of the robbers arrived in a dark blue Infiniti SUV. The subjects, who were armed with long guns, approached the driver of the armored truck as he attempted to deliver the money to the bank.   They beat the driver and stole from him a courier bag containing $103,800. The fourth subject stayed in the SUV, which fled the scene following the robbery.

Shortly after, at approximately 9:36 a.m., D.C. Fire & Emergency Medical Services Department found the vehicle used in the robbery—a dark blue Infiniti SUV—approximately half

a mile from the robbery location. The center of the dashboard area and infotainment system electronics had been set on fire. This vehicle, the one used to escape the scene of the armed robbery, was stolen on September 7, 2021 in Silver Spring, Maryland. Based on a review of surveillance video, the robbers used different vehicles to escape the area after abandoning and setting fire to the dark blue Infiniti.   One of the getaway vehicles was a gold Infiniti sedan.

At trial, the government expects to link codefendants Brock and McNair to the crime through witness testimony of individuals with personal knowledge of the crimes and its planning, surveillance video, GPS data obtained from codefendant Brock, phone call records between codefendants, and forensic DNA evidence tying both codefendants Brock and McNair to the escape vehicle.

### *The December 8, 2021 Robbery*

On December 8, 2021, the same Brinks truck driver was assaulted and robbed at 2901 Minnesota Avenue Southeast.[1]   At least two witnesses will identify codefendants Brock and McNair as the two men involved in the assault and robbery.   Brock and McNair arrived thirty-six minutes ahead of the Brinks truck and parked in the rear parking lot.   The two parked in a location where they could observe the Brinks truck turn past them, giving them time to make their way around the building and wait.   After the two saw the Brinks vehicle approach, they walked through a parking lot and waited.   McNair entered the store's vestibule, while Brock waited next to the store's entrance.   When the driver attempted to enter the store, McNair burst out and Brock ambushed the driver from the side, wielding a black handgun.   The two assaulted the driver, with McNair stealing the driver's courier bag while Brock searched the driver's pockets and attempted to steal his firearm.

---

[1] The location of this robbery is approximately 1.3 miles away or a six-minute drive from the location of the October and March robberies.

Brock hit the driver in the head with his gun before fleeing.

At trial, the government expects to link codefendants Brock and McNair to the crime through witness testimony of individuals with personal knowledge of the crimes and its planning, and surveillance video where the subjects can be identified, and statements of codefendants to others linking them to the crime.

### *The March 2, 2022 Robbery*

On March 2, 2022, an armed robbery occurred of a Brinks Armored Car. In this case, defendant Sheffey directly participated in the robbery. At approximately 8:56 a.m., a dark SUV pulled up and parked at the northwest corner of 14th Street and Good Hope Road Southeast, facing the Truist Bank.[2]  No one exited the vehicle.  Instead, the vehicle waited for a Brinks truck to arrive.

* * *

---

[2] This is the same location as the October robbery but the bank's ownership changed from SunTrust to Truist.

4

Shortly after, a man wearing a black hoodie, a light-colored vest, and tan shoes/boots approached the corner and sat on the ground at a bus stop located just outside the passenger's side of the dark SUV as depicted in *Figure 1.*



*Figure 1 – A Still Image of Video Footage Showing Dark SUV (In Yellow) that arrived*
*approximately 9 min prior to the Brinks Armored Truck and Man in Yellow Vest (in Red)*

At approximately 9:04 a.m., a Brinks armored truck drove into the 1300 block of Good Hope Road Southeast and parked in front of the Truist Bank. The position of the dark SUV and the Brinks Armored Truck is depicted in *Figure 2*.



*Figure 2 – A Still Image of Video Footage Showing Dark SUV (in Yellow), Man in Yellow Vest (in Red) and Brinks Armored Truck (in Blue)*

Shortly after, a passenger in the Brinks armored truck got out. The dark SUV then drove to the rear of the Brinks truck. At the same time, the armed robbers moved quickly towards the Brinks truck. As depicted in *Figures 3 and 4.*



*Figure 3 – A Still Image of Video Footage Showing the Moment the Brinks Guard Exited the Armored Car, the Armed Robbers Sprang into Action*

At once, the armed robbers struck from three different angles. The dark SUV pulled to the rear of the Brinks Armored Car, the Man in the Yellow Vest walked along the sidewalk, and another armed robber took a position to the front of the vehicle, striking from the left.



*Figure 4 – A Still Image of Video Footage Showing the Armed Robbery Participants, the Dark SUV (In Yellow) the Man in the Yellow Vest (In Red), and the Point Man Striking from the Front Left (In Orange)*



*Figure 5 – A Still Image of Video Footage from Inside the Brinks Armored Truck Showing the Armed Robber Striking from the Front Left of the Vehicle (In Orange)*

Before the victims could react, another subject with a long arm weapon exited the passenger's side of the SUV and ran up to the passenger's side of the Brinks truck.



*Figure 6 – A Still Image of Video Footage Showing the subject with a long arm weapon exiting the passenger's side of the SUV (in Green)*

One subject, armed with a handgun, entered the truck, pointed the handgun at the driver, grabbed and handed multiple bags of U.S. currency to another subject just outside the truck, who carried them back to the dark SUV.  Surveillance video from the armed robber entering and brandishing a firearm is depicted in *Figures 7 and 8* below.



*Figure 7 – A Still Image from Video Footage inside the Brinks Armored Truck Showing an Armed Robber Brandishing a Handgun (in Yellow) at a Brinks Driver*



*Figure 8 – Showing an armed robber with a handgun (in yellow) and an armed robber with a long gun (in Green)*

The subjects then fled in the dark SUV, stealing more than $1 million. Less than 45 seconds after springing into action and showing force, the armed robbers departed the scene. The dark SUV drove off at approximately 9:06 a.m.

Following the robbery, at approximately 9:12 a.m., a witness called 911 to report suspicious activity around the 2500 block of Naylor Road Southeast, which is an approximately 4-minute, one mile drive from the robbery location. This witness heard a loud noise, consistent with car doors slamming, coming from the alley in the rear of the building. The witness looked outside and saw four subjects standing around a parked car, which was later determined to be the same dark SUV. The witness saw that all four subjects were wearing dark clothing and face masks and one subject was wearing a bright colored construction vest. The witness saw the four subjects walk away from

the dark SUV. One was carrying what appeared to the caller as a machine gun and another was carrying what appeared to be a dark plastic bin.

This witness then saw three of the four subjects standing near a dumpster located at the rear of 2420 T Street Southeast. The witness observed a fourth subject standing at the end of the alley that intersects with the 2400 block of S Street Southeast. The witness stated when the fourth subject was at the end of the alley, the subject motioned with his hands. The witness then observed a four-door sedan enter the alley from the location where the fourth subject was motioning. The witness further stated that all four subjects then entered the four-door sedan and fled the area.

When law enforcement searched the area around and behind 2500 Naylor Road Southeast, they found the dark SUV, which was a Honda Pilot that was previously reported stolen in Montgomery County between the February 28 and March 1, 2022, as depicted in *Figure 9*. Law enforcement also found an AR-style firearm underneath a dumpster located in the rear of 2420 T Street Southeast as depicted in *Figure 10*. This firearm was tested by the Firearms and Toolmarks division of the Federal Bureau of Investigation Laboratory in Quantico, Virginia, and was confirmed as a 5.56 x 45-millimeter (.223 Remington caliber) Anderson Manufacturing pistol, model AM-15, which functioned as a firearm when tested.



*Figure 9 – A Photograph of the Abandoned Dark SUV used in the Robbery, a Honda Pilot Stolen the Late Night/ Early Morning the Day Before the Robbery*



*Figure 10 – A Photograph of the AR-style Firearm Underneath a Dumpster Near the Abandoned SUV*

Law enforcement searched the dark SUV and found a plastic bag on the center console and money wrappers consistent with those used by Brinks on the floorboard.   Codefendant Brock's fingerprints were on both items.



*Figure 11 – A Photograph of the Money Wrapper found in the Honda Pilot that contained Codefendant Brock's Fingerprint*

Other evidence collected from the vehicle used to escape the March 2, 2022, armed robbery was sent to the FBI laboratory at Quantico, VA for forensic examination.   The 2019 Honda Pilot was swabbed by the FBI evidence response team to conduct DNA examination.   A DNA profile was developed from a swab of the steering wheel.   A comparison of that profile to a profile of Defendant Sheffey indicated very strong support for his inclusion in that profile.[3]

Other items besides plastic bags and money wrappers were found in the vehicle. A yellow vest was found in the vehicle as depicted in *Figure 12.* The FBI performed DNA analysis on this vest and found moderate support for the inclusion of Defendant Sheffey.[4]

---

[3] Specifically, the DNA analysis reflected that Male DNA was obtained from swab of the steering wheel. The DNA profile was interpreted as originating from four individuals. The DNA results from the swab of the steering wheel are 12 quintillion times more likely if Sheffey and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors. The FBI's qualitative scale indicates that this is very strong support for inclusion. This is the highest level of inclusion and applies to any ratio greater than one million.
[4] Specifically, the DNA analysis reflects that male DNA was obtained from the vest.   The profile obtained from the vest was interpreted as originating from three individuals. This DNA profile



*Figure 12 – A Photograph of the Yellow Vest Found in the Honda Pilot that Contained a DNA Profile with a Moderate Level of Support for Including Sheffey*

Additionally, the government anticipates that multiple witnesses with personal knowledge will testify that Sheffey was involved in the planning and execution of these robberies and in the use of proceeds from these robberies.

### *Use of the Illicit Proceeds*

Following the March robbery, Sheffey and other co-conspirators used funds from the robbery to travel to Los Angeles, California.   The purpose of this trip was to make connections with drug wholesalers and purchase drugs for distribution in Washington, D.C.   Sheffey and other

---

was 6,400 times more likely if Sheffey and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors. The FBI's qualitative scale indicates that this is moderate support for inclusion.

co-conspirators stayed at a luxury rental property which cost thousands of dollars a night.   The trip was documented on Sheffey and other co-conspirators' social media.   Those images reflect the co-conspirators displaying significant amounts of cash.   In sum, the government will show that Defendant Sheffey and his co-conspirators intended to use the proceeds of the armed robberies to fund an expansion into other criminal enterprises.

### *Defendant Sheffey's Superior Court Arrest for Second Degree Murder While Armed*

On September 13, 2023, Defendant Sheffey was indicted in D.C. Superior Court Case No. 2023 CF1 006558.   He was charged with Second Degree Murder While Armed, 22 D.C. Code § 2103, 4502; two counts of Possession of a Firearm During a Crime of Violence or Dangerous Offense, 22 D.C. Code § 4504(b), and two counts of Assault with a Dangerous Weapon, 22 D.C. Code § 402. These charges stem from a shooting on August 15, 2021.

On August 15, 2021, Defendant Sheffey and others were standing on 16th Street, between U Street and V Street Southeast. Around 5 p.m., the decedent (Kiwyon Maddox) and another individual departed from the corner of 16th Street and W Street Southeast on a dirt bike and began riding up 16th Street SE in the direction of V Street Southeast. Right before the dirt bike reached V Street SE, Sheffey began shooting in the direction of the dirt bike without provocation. Moments after Sheffey began firing, the decedent and the other individual attempted to take cover, before returning fire at Sheffey.   Sheffey and others in his group shot back in the direction of the decedent and other individual, and a brief shootout ensued. The decedent attempted to flee.   As he ran, he was struck in the back from a bullet fired by one of the individuals on Sheffey's side (either Sheffey or another individual).   After he was arrested, Sheffey waived his *Miranda* rights. He admitted he was present at the scene of the August 15, 2021 shooting, but denied that he fired a gun in the direction of the decedent.

On September 12, 2023, the defendant was charged by indictment with the aforementioned offenses. His initial appearance was held on October 2, 2023 and his detention hearing is scheduled for October 10, 2023. The government now moves for detention pending trial pursuant to the above-referenced provisions of the federal bail statute.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community. *See id.* As is relevant to this case, the Act provides rebuttable presumptions for cases where there is probable cause to believe that the defendant committed an offense under 18 U.S.C. § 924(c). *Id*. § 3142(e)(3)(A), (C). "For purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."

18

18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

Because Defendant Sheffey is charged with a violation of 18 U.S.C. 924(c), the Court must presume that no condition or combination of conditions will reasonably assure the safety of the community. A review of the 3142(g) factors makes clear that the Defendant cannot overcome these presumptions. Simply put, Defendant Sheffey has demonstrated his capability and willingness to conduct brazen armed robberies and to engage in public shootouts that have already resulted in the loss of human life. He represents a danger to our community and should be detained pending trial.

## I.  THE NATURE AND CIRCUMSTANCES OF THESE OFFENSESMERIT DETENTION.

The first factor to be considered, the nature and circumstances of the offenses charged, weighs heavily in favor of detention.

The defendant conspired with others to engage in a series of highly planned armed robberies. Every one of these robberies—which targeted armored trucks with armed guards—necessarily required firearms. In other words, each conspirator planned for the possibility of deadly force. In fact, during the first two of the robberies, Mr. Sheffey's conspirators used firearms to beat the armored truck driver. Therefore, by the time of his involvement in the third of these robberies, Mr.

Sheffey was keenly aware of the need to carry firearms and, if necessary, use them to harm the truck drivers.

As described by Judge Berman Jackson in *United States v. Lee*, "[t]he best outcome, if everything goes as planned during an armed robbery, involves a victim's being placed at risk and feeling terrified for his safety, possibly for years to come, and if things go wrong, someone—or multiple people—could be killed or seriously injured." 195 F.Supp.3d 120, 129 (D.D.C. 2016) (finding the nature and circumstances weighing heavily in favor of detention in a case where a single Hobb's Act robbery was charged).   This was not just one armed robbery, it was three armed robberies.   Each the results of months of planning and coordination.   In each robbery, Mr. Sheffey and his conspirators arrived and lay in wait at a designated stop on these truck drivers' routes.   As soon as the driver opened the door, they sprang into action with a well-coordinated, well-timed, and inherently dangerous act – brandishing firearms against armed security guards and aiming their firearms inches from the heads of their victims. Each time, they did this in broad daylight, on Wednesday mornings, during morning rush hour.   As members of our community were going to school, arriving at work, or commuting, Mr. Sheffey and his co-conspirators committed intensely hostile and violent acts – one more apt to be depicted in a violent movie scene than occurring on the streets of our community.

This factor weighs heavily in favor of detention.

## II.     THE WEIGHT OF THE EVIDENCE IS STRONG.

At trial, the Government anticipates that multiple witnesses will testify based on first-hand knowledge as to Sheffey's role in these offenses and use of the proceeds of the March 2022 robbery. This testimony will be corroborated by evidence from social media, including the aforementioned evidencing detailing the trip to L.A.   Additionally, compelling forensic evidence ties Sheffey to

the March 2022 robbery.   The Government anticipates proving at trial that his DNA was on the steering wheel of the vehicle used in the March robbery.   This vehicle was observed by a witness who provided live narration as Sheffey and his conspirators transferred the proceeds of their robbery to a different vehicle and abandoned an assault rifle under a dumpster.

This combination of witness testimony, corroborated by social media and forensic evidence, is formidable and justifies pre-trial detention.

## III.   THE DEFENDANT'S HISTORY AND CHARACTERISTICS MERIT DETENTION.

The third factor, the defendant's history and characteristics, weighs heavily in favor of detention.

Mr. Sheffey has been indicted in two separate and serious offenses.   In addition to the offense with which he is charged here, a grand jury has indicted him on charges of Second Degree Murder While Armed, two counts of Assault with a Dangerous Weapon, and two counts of Possession of a Firearm During a Crime of Violence.   These are among the more serious—and violent charges—that an individual can face in D.C. Superior Court.   There, Sheffey is alleged to have instigated a shootout on a residential street at 5:00 PM.   His actions led directly to the death of another man and given the time, location, and others on the street, it is fortunate that more people were not harmed or killed.

Beyond his pending charges, Sheffey has a history of arrests indicative of an individual with ready access to firearms and a disregard for lawful orders.

On October 4, 2019, MPD officers observed a stolen vehicle driving in the 3000 block of Stanton Road SE.   Officers attempted to stop the vehicle, but it fled from police.   The vehicle led police on a chase, twice striking the pursuing officers' vehicles.   Sheffey was a passenger in the

vehicle and fled from the vehicle once it stopped.   He was found hiding near a basement entrance door.   Next to Sheffey, hidden in a flower pot, was a Taurus Millenium G2 loaded with eleven rounds and one in the chamber.   An additional firearm was recovered from the stolen vehicle.   Mr. Sheffey was released without charges.

On April 26, 2022, officers observed Sheffey and another individual sitting inside a car with heavy window tins and no license plate.   As officers approached the car, they observed both occupants frantically scrambling inside the vehicle.   Sheffey, who was in the driver's seat, was holding an orange bottle with a white lid of what officers recognized as codeine/promethazine. The passenger in the vehicle was holding a similar bottle.   Both individuals were stepped out of the car, and officers found a firearm underneath the driver's seat.   Officers searched the car and found multiple large bottles of codeine, pounds of marijuana, packaging materials, and multiple digital scales.   Sheffey was released without charges.

On June 23, 2022, MPD officers were patrolling in the 1500 block of U Street SE, an area known for gun violence and drug trafficking.   Officers observed Mr. Sheffey sitting in a car with the engine on with a large bag of marijuana in the passenger seat.   Officers approached the vehicle and asked Sheffey to step out.   He refused, and reversed the vehicle onto the sidewalk, hitting a uniformed officer with the car as he did so.   Sheffey was able to escape.   Officers found Sheffey six days later and arrested him.   On September 27, 2022, Sheffey pled guilty to ninety days' confinement suspended.

On April 2, 2023, MPD officers responded to reports that an individual had been shot at 1412 Downing Street NE.   Residents in the apartment building directed officers to a unit and Defendant Sheffey and his significant other answered the door.   Sheffey's significant other was bleeding from an apparent gunshot wound to the left forearm.   Officers observed blood in the living

room and bedroom and a bullet hole in the bedroom wall.   Officers also recovered a block Glock 22 with a twenty-nine round extended magazine between the mattress and box spring.   Defendant Sheffey admitted to accidentally shooting his significant other and admitted to purchasing the gun. Sheffey was released without charges.

Mr. Sheffey has also been convicted of Disorderly Conduct (April 11, 2018 in Upper Marlboro, Maryland) and Failing to Appear (August 12, 2015 in Arlington, Virginia). Taken together, Mr. Sheffey has been linked with at least five illegal firearms over the last four years.   He has discharged those firearms on at least two occasions, on one occasion leading to a public shootout that cost a man his life, and on another shooting his significant other.   He has been arrested for fleeing from law enforcement on two occasions and convicted of failing to appear for a court hearing.   His history is indicative of someone who is a danger to the community and unlikely to comply with lawful orders from this Court.

Considering these factors, the defendant's history and characteristics weigh in favor of detention in this case.

## IV.    SHEFFEY PRESENTS A DANGER TO OUR COMMUNITY.

The defendant's other criminal conduct and offenses for which he is currently charged are gravely concerning. The defendant is charged with causing the death of one person, Kiwyon Maddox, by engaging in a shootout in a residential street at 5 p.m. on a Sunday afternoon. In the present case, his actions in participating in an armed robbery with AR-15 style weapons and handguns, robbing armed security guards in broad daylight and a busy street in Washington, D.C. demonstrate a total disregard for the safety of the community. The defendant is a classic case of the type of dangerous person the Bail Reform Act seeks to protect the public from, an individual who has shown the willingness and capability to engage in violence and in highly dangerous acts that

result in lost human life. There are no conditions or combination of conditions apart from detention that can guarantee the safety of the community. The government believes the defendant poses a severe danger to the community and should be detained pending trial.

## **CONCLUSION**

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

<div style="margin-left: 50%;">

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

</div>

By:       _/s/ Alexander R. Schneider_
ALEXANDER R. SCHNEIDER
Special Assistant U.S. Attorney
Michigan Bar No. P71467
601 D Street, N.W.
Washington, D.C. 20530
alexander.schneider@usdoj.gov
(202) 252-7124