## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 23-CR-26 (RCL)** |
| **WILLIAM BROCK,** | : | |
| also known as "Stu" | : | |
| **ANTHONY ANTWON MCNAIR JR.,** | : | |
| also known as "Mousey" | : | |
| **ERIN SHEFFEY** | : | |
| also known as "Freak", | : | |
| | : | |
| **Defendants.** | : | |

### GOVERNMENT'S EMERGENCY
### MOTION TO MODIFY CONDITIONS OF DETENTION

Trial in this matter is scheduled for August 19, 2024.   Two of the Government's anticipated trial witnesses (Witness 1 and Witness 2) have entered into cooperation agreements.   Consistent with its obligations, the Government has provided information to Defendants' counsel pursuant to a protective order to ensure that counsel can adequately prepare for trial while maintaining the safety of the Government's witnesses. Over the last several months, Witness 1 has been threatened multiple times by each of the defendants in this matter. Over the last few days, Witness 1's family and Witness 2 have also received threats. These threats have escalated following the Government's disclosure of redacted information related to Witness 1 and Witness 2. Given the timing of the threats, it appears that the defendants are sharing information with non-detained accomplices who then approach and threaten the Government's witnesses. Because these defendants are detained, they are necessarily communicating through a limited number of channels, including telephone calls, communications by text or email, letters, or in-person visits.   Because the defendants have abused their privileges to threaten the Government's witnesses, they have forfeited the right to these

means of communication. For the following reasons, the Government requests that the Court order that through trial in this matter, the D.C. jail prohibit each defendant from communicating with anyone other than members of the defense team, including by placing each defendant in segregated housing at the D.C. jail.   The Government also requests that a hearing be held on this matter as soon as possible.

## BACKGROUND[1]

### *Threats to Witness 1 and His Family*

Witness 1 was a member of the same violent street crew of which Defendants Brock, McNair, and Sheffey were also members. Following his arrest for an unrelated offense, Witness 1 agreed to provide information regarding these robberies and has since entered into a cooperation agreement. Witness 1 was present as Defendants Brock, McNair, and Sheffey planned the armored truck robberies. Witness 1 will testify as to the role each defendant played in these offenses, including statements each defendant made reflecting their role and involvement in the robberies.

While detained, Witness 1 has reported being threatened by each of Defendants Brock, McNair, and Sheffey on multiple occasions.

In September and October of 2023, Defendant Brock was housed in the same unit as Witness 1. For his safety, until he could be transferred to an alternative location, Witness 1 was kept in his cell for twenty-three hours a day, while Brock was under no such restrictions. On multiple occasions, Brock approached Witness 1's cell and threatened to kill him. Brock also informed others around Witness 1 that Witness 1 was a cooperating witness.   In a prison setting, informing

---

[1] The Government refers to the background sections of its 404(b) Notices for the factual allegations underlying the Indictment in this case. *See* ECF Nos. 26 and 46.

other inmates that an individual is a cooperator poses a significant threat to that individual's wellbeing. Unsurprisingly, Witness 1 has reported that he has frequently been the target of violence.[2]

With respect to Defendant Sheffey, Witness 1 reported that he encountered Sheffey when they both were being transported to court one day. While they were in separate transports, Sheffey saw Witness 1 and began shouting loudly identifying him as "hot" or a cooperator. As noted above, the identification of an individual as being a cooperating witness in a detention setting poses serious risks to their wellbeing.

In March and April 2024, Witness 1 remained in the same housing unit, still under lockdown for twenty-three hours a day. At the same time, Defendant McNair was on a detail that provided him the ability to walk through different units. Over the course of at least two months, McNair used his detail to threaten Witness 1 on multiple occasions. Specifically, McNair approached Witness 1's cell and issued an escalating series of threats. McNair directed Witness 1 not to testify against him, cursed at him, and stated that Witness 1 was letting the Government trick him. McNair offered Witness 1 significant sums of money not to testify against him, $20,000 and later $25,000 or $30,000. McNair informed Witness 1 that if Witness 1 testified he would kill Witness 1's wife and Witness 1's mother. McNair stated that he had associates watching those individuals. Witness 1 believed these threats to be credible as McNair knew where Witness 1's family lives.

After Witness 1 reported this conduct, the Government requested video or images from D.C. jail for the area outside of Witness 1's cell during the approximate dates when Witness 1 reported

---

[2] The Government has requested but not yet received any available video or images that might reflect these encounters. It is possible that given the passage of time such images were not preserved.

McNair threatening him. Images from D.C. jail reflect multiple occasions where McNair can be seen outside of Witness 1's cell:

- March 11, 2024 at 2:53 PM

- March 21, 2024 at 2:29 PM

- March 21, 2024 at 9:18 PM

- March 24, 2024 at 4:21 PM

- March 26, 2024 at 10:41 PM

- March 27, 2024 at 1:11 AM

- April 3, 2024 at 4:20 AM

- April 5, 2024 at 10:45 PM

Notably, during these occasions, McNair appears to be in conversation with Witness 1, corroborating Witness 1's statements.

*March 21*                *March 26*                *April 5*



The Government was first made aware of the details of each of these threats on July 1, 2024. Since that time, the Government has worked to investigate further, including by working with D.C.

jail to obtain additional corroboration.

As promised by Defendant McNair, the defendants' attempts to threaten Witness 1 have since escalated to threats to Witness 1's family.

Witness 1's wife has recently reported several attempts to intimidate her. Witness 1's wife moved to avoid threats to an area where she had no associations. Recently, however, she reported that an unindicted co-conspirator in this case followed her home from a store. This Saturday, July 20, Witness 1's wife recalled that the same vehicle in which that unindicted co-conspirator had previously followed her, appeared outside of her house. The car drove up to where Witness 1's wife was parked and a man stated: "found you, tell [Witness 1] what's up."

### *Threats to Witness 2*

Witness 2 was also a member of the same violent street crew of which Witness 1 and Defendants Brock, McNair, and Sheffey were also members. Following his arrest for an unrelated offense, Witness 2 agreed to provide information regarding these robberies and has since entered into a cooperation agreement.

Witness 2 is not detained and was moved to a location outside of Washington, D.C. for his safety. On Sunday, July 21, Witness 2 reported that two men showed up at his home demanding that he come outside. Witness 2 identified one of the men as a cousin of an unindicted co-conspirator in this case.[3]  That man had a gun and threatened Witness 2 with it, including by banging on Witness 2's door with the gun. Notably, these threats came shortly after the Government for the first time provided summaries of Witness 2' statements and identified Witness 2 as a likely trial witness. To the Government's knowledge, Witness 2's cooperation has not been disclosed in any other pending

---

[3]  This is the same unindicted co-conspirator observed by Witness 1's wife.

case in D.C. District or Superior Court. Therefore, it appears that Witness 2 was targeted by individuals assisting the defendants in this case.

## ARGUMENT

While "[p]retrial detainees have a substantive due process right against restrictions that amount to punishment," courts have repeatedly found that restrictions upon pretrial detainees can be imposed if those restrictions are "incident of some other legitimate government purpose." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (internal quotations omitted).   These restrictions have included the loss of telephone privileges, visitation privileges, and administrative segregation.

In *Valdez*, a trial court had restricted a defendant's telephone access to prevent the defendant from alerting unindicted co-conspirators.   *Id.*   The defendant's access to a telephone was limited for approximately six months while his co-conspirators were found and arrested.   *Id.* at 1043.   The Ninth Circuit upheld this restriction.   It found that "[t]he telephone restriction was imposed to prevent [the defendant] from tipping off his co-conspirators about the recently-issued indictments and, thereby, to ensure their capture with minimal danger to the arresting officers. The government has a legitimate interest in ensuring the safety of police officers when executing arrests and in preventing a detainee from helping his co-conspirators elude arrest."   *Id.* at 1046.   Further, "the restriction was only in place for a short time and only for as long as it served its stated purpose." *Id.*   Therefore, this telephone restriction was not a punishment, but a restriction incident to a legitimate government purpose.

Similarly, in *Jones v. Horne*, the D.C. Circuit rejected a challenge to restrictions imposed on a defendant who "was attempting to continue his illegal drug operation from the D.C. Jail and may have been attempting to identify, locate, and possibly harm persons cooperating with the

United States in his prosecution, one of whom was housed at the D.C. Jail." 634 F.3d 588, 598 (D.C. Cir. 2011). As a result, the defendant was placed in "Total Separation" status where he was denied social visits, telephone, and mail privileges for approximately five months. *Id.* at 593, 599. The D.C. Circuit upheld these restrictions.

And, in *Oliver v. Elliot*, a defendant was repeatedly placed in administrative segregation because of attempts to intimidate witnesses in his case. *Oliver v. Elliot*, No. CV 13-224-M-DWM-JCL, 2015 WL 2354565, at *2 (D. Mont. May 15, 2015). The Court rejected a challenge to these restrictions because "[t]he government has a legitimate interest in preventing witness tampering." *Id.* Given this interest, and because the administrative segregation was reasonably related to that interest, the Court upheld this restriction.

For the last several months, the defendants have been engaged in a campaign to intimidate the Government's witnesses. Each of the defendants threatened or attempted to threaten Witness 1 on multiple occasions inside D.C. jail. Defendants Brock and McNair abused the privileges they had in D.C. jail to approach Witness 1, stand outside his cell, and threaten him. Since that time, and, in particular, since the Government made pre-trial disclosures, these threats have escalated. Individuals associated with the defendants' violent conspiracy has tracked down Witness 1's wife as well as Witness 2 in areas they did not previously live. The individual who threatened Witness 1's wife made clear that his threats arose from this case, referencing Witness 1 and bragging that he had been able to find Witness 1's wife. The individual who threatened Witness 2 did so with what appeared to be a loaded handgun.

This course of events indicates that the defendants are sharing information from discovery with accomplices outside the jail. They are not doing so to better prepare their defense. Instead, they are sharing this information so that their accomplices can threaten the Government's witnesses

7

and undermine this trial. While the Government is taking steps to ensure the safety of its witnesses, the defendants and their accomplices have indicated a startling willingness and ability to reach beyond the walls of the jail to engage in witness tampering.   They have not just threatened witnesses but tracked the loved one of a witness to threaten her as well.   The Government has a legitimate interest in the safety of its witnesses and ensuring that its witnesses can testify free from coercion.   *See Jones*, 634 F.3d at 598; *Oliver v. Elliot*, 2015 WL 2354565, at *2.   As such, to ensure the integrity of this trial, the Government requests that the Court order the following:

- ***Each defendant is to be placed in segregated housing, without access to other inmates.***   This restriction is necessary to ensure that the defendants are not providing information to other inmates who then, in turn, provide the information to individuals outside the D.C. jail.

- ***Each defendant's privileges to phones and tablets will be suspended, except for attorney calls.***   This restriction is necessary to ensure that the defendants do not use their phones or tablets to provide witness information to others outside the D.C. jail for the purpose of intimidating these witnesses.

- ***In-person visits will be suspended except for attorney visits.***   This restriction is necessary to ensure that the defendants are not providing information to other inmates who then, in turn, provide the information to individuals outside the D.C. jail.

The Government requests that these restrictions be imposed immediately and last through the end of trial in this matter:   a period of approximately sixty days.   In other words, the Government is only requesting that these restrictions be "only in place for a short time and only for as long as [they] serve[] [their] stated purpose." *Valdez*, 302 F.3d at 1046.   And this sixty-day period is notably shorter than the periods other courts have approved of for similar restrictions. *See id.* (restrictions in place for six months); *Jones*, 634 F.3d at 598 (restrictions in place for five months).   Following the conclusion of trial, these restrictions can be relaxed as the need for witness safety will presumably have resolved.

8

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Government requests that the Court modify the conditions of each defendant's pretrial detention to ensure the safety of the Government's witnesses.   The Government also requests that a hearing be held on this matter as soon as possible.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


*/s/ Cameron A. Tepfer*
Cameron A. Tepfer
D.C. Bar No. 1660476
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov


*/s/ Alexander Schneider*
ALEXANDER R. SCHNEIDER
Michigan Bar No. P71467
Special Assistant U.S. Attorney
601 D Street N.W.
Washington, D.C. 20530
(202) 252-7124
alexander.schneider@usdoj.gov

9